[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10314

_____

D.C. Docket No. 3:10-cv-00471-MCR-CJK


PAYROLL MANAGEMENT, INC.,
a Florida Corporation,
PAYROLL MANAGEMENT, INC. OF DELAWARE,
a Delaware corporation,
YOOHOO CAPITAL, LLC,
a Georgia limited liability company,

                                        Plaintiffs - Appellants,

versus

LEXINGTON INSURANCE COMPANY,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(March 1, 2016)

Before TJOFLAT and ROSENBAUM, Circuit Judges, and RESTANI,[*] Judge.

PER CURIAM:

This case, which primarily concerns the scope of an insurance policy under Florida law, is before this court for a second time. The first time this case was before us, we remanded to the District Court for additional fact-finding to establish complete diversity of citizenship between all plaintiffs and all defendants with instructions to reenter summary judgment if federal subject-matter jurisdiction could be properly established. After dismissing a nondiverse plaintiff it found was not a real party in interest to this case, the District Court reentered its earlier grant of summary judgment in favor of the insurer on all claims. With the benefit of thorough briefing and oral argument, we affirm the District Court.

## I.

Payroll Management, Inc. ("PMI Florida") and Payroll Management, Inc. of Delaware ("PMI Delaware") are related "employee-leasing companies."[1] PMI Florida, a Florida corporation, is responsible for the companies' leased employees who work in Florida. PMI Delaware, a Delaware corporation, is responsible for all

---

[*] The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

[1] Employee-leasing companies hire employees and then "lease" them out to clients. Under such an arrangement, the clients, in exchange for a fee, get the benefit of the leased employees' labor and are spared the attendant administrative, financial, and legal responsibilities. Relevant here, these responsibilities often include the employee-leasing companies' provision of healthcare coverage for their employees.

other employees.  Both PMI Florida and PMI Delaware are headquartered in the same physical location in Fort Walton Beach, Florida.

PMI Florida and PMI Delaware entered into a contract with Lexington Insurance Company ("Lexington"), a Delaware corporation, for a PEO Plus Employment Practices Liability Insurance Policy ("Insurance Policy") providing coverage from January 26, 2010 to January 26, 2011.  The relevant language of the Insurance Policy provides:

> B.     COVERAGE B – PROFESSIONAL/EMPLOYMENT PRACTICES LIABILITY – (CLAIMS MADE) LIABILITY
>
> **We** will pay on behalf of the **Insured** all sums that the **Insured** shall become legally obligated to pay as **Loss Amounts** resulting from any **Claim** first made against an **Insured** and reported to **Us** in writing during the **Policy Period** (or any applicable extended reporting period) for any **Wrongful Professional Act**, or **Wrongful Employment Practice Act**, which takes place anywhere and on or after the applicable **retroactive date** as indicated in the Declarations next to the type of **Wrongful Act** involved and before the end of the **Policy Period**.
> . . .
> II.  Definitions
> . . .
> Definitions for Coverage B.
> . . .
> H.  **Loss Amount** means all forms of compensatory damages, monetary damages, statutory damages, multiplied damages, punitive or exemplary damages, judgments, settlements, statutory attorney

3

fees, and **Defense Costs** arising out of **Claim(s)** alleging **Wrongful Employment Practice Acts**.[2]

. . .

O.  **Wrongful Act** means:  a) a **Wrongful Employment Practice Act**, or b) a **Wrongful Professional Act**.

. . .

Q.  **Wrongful Professional Act** means any breach of duty, neglect, error, misstatement, misleading statement or omission in performing or failing to perform services for others for a fee in the administration of **Leased Employees** assumed from the **Client**.

. . .

*III.  Exclusions*

. . .

*In addition to the exclusions applicable to all* **Wrongful Acts** *under Coverage B., the following exclusions shall apply to all* **Wrongful Professional Acts**:

This insurance does not apply to any **Claim** against an **Insured**:

. . .

D.  arising out of liability the **Insured** assumed under any contract or agreement.  This exclusion will not apply to liability which would arise against the **Insured** in the absence of the contract or agreement.

PMI Florida and, to an extent disputed by the parties on appeal,[3] PMI Delaware also entered into a contract with Blue Cross Blue Shield of Florida, Inc. and Health Options, Inc. (collectively, "Blue Cross") to secure healthcare coverage for their employees.  After receiving no payments for the prior five months, Blue

---

[2] This definition of "Loss Amount" was adopted as part of a later endorsement, effective January 26, 2010.

[3] The parties dispute whether any of PMI Delaware's leased employees received healthcare coverage under the Blue Cross contract and whether the other named party to the contract, "PMI Inc. Group Health Plan," should be understood to include PMI Delaware in addition to PMI Florida.  Because the answers to those questions do not affect our disposition of this case, we decline to speculate as to their resolution and will assume that PMI Delaware was a party to the Blue Cross contract.

4

Cross cancelled coverage effective January 31, 2010. Three months later, on April 9, 2010, Blue Cross filed suit to recover the missed payments, naming as defendants PMI Florida and "PMI Inc. Group Health Plan," the other named party to the Blue Cross contract.

In May 2010, PMI Florida submitted a claim to Lexington pursuant to the Insurance Policy seeking coverage for the costs that it would incur from the Blue Cross suit. On July 16, 2010, Lexington denied coverage for the Blue Cross suit. After receiving a request to reconsider its decision, Lexington affirmed its denial of coverage on September 28, 2010.

Before its initial decision to deny coverage, Lexington was contacted by Yoohoo Capital, LLC ("Yoohoo Capital") on May 4, 2010, the first of several contacts. Yoohoo Capital,[4] which was considering the purchase of PMI Florida and PMI Delaware stock, wanted assurances that Lexington would cover any losses incurred by PMI Florida in the Blue Cross suit. In an email sent on June 15, 2010, Stephen Burwell, a claims examiner for Lexington, relayed the following to Donna Mickle-Bee, then a consultant with Yoohoo Capital performing due diligence on the potential acquisition of PMI Florida: "As we discussed, there appears to be coverage for this matter under Policy No. 20432538 but, as we also

---

[4] On remand from this court, the District Court determined that Yoohoo Capital is a citizen of Florida and Georgia for purposes of diversity jurisdiction.

discussed, I must review with my supervisor." Hearing nothing further from Burwell, Yoohoo Capital acquired PMI Florida and PMI Delaware that same day.

After Lexington denied coverage, PMI Florida, PMI Delaware, and Yoohoo Capital filed suit against Lexington in the Okaloosa County Circuit Court on September 21, 2010. PMI Florida and PMI Delaware alleged claims against Lexington for breach of contract and declaratory judgment, contending that there was coverage for the Blue Cross suit under the Insurance Policy. Yoohoo Capital alleged a claim of negligent misrepresentation, contending that it purchased PMI Florida and PMI Delaware in reliance on false assurances that Lexington owed coverage for the Blue Cross suit. Lexington answered on November 5, 2010, denying liability on all claims.

On November 16, 2010, Lexington removed the case to the United States District Court for the Northern District of Florida on the basis of diversity jurisdiction. *See generally* 28 U.S.C. §§ 1332(a), 1441(b), 1446. After a period of discovery, the District Court entered two orders granting summary judgment to Lexington. On March 22, 2012, the court granted summary judgment to Lexington on Yoohoo Capital's claim for negligent misrepresentation. On September 17, 2013, the court granted summary judgment to Lexington on PMI Florida and PMI Delaware's claims for breach of contract and declaratory relief.

6

On appeal, this court vacated the two summary-judgment orders and remanded for additional fact-finding because the basis for federal diversity jurisdiction had not been properly established. *See Payroll Mgmt., Inc. v. Lexington Ins. Co.*, 566 F. App'x 796, 797–98 (11th Cir. 2014) (per curiam). We directed the District Court to reenter its grant of summary judgment if the court found that PMI Delaware could be dismissed from the case and that Yoohoo Capital is not a citizen of either Delaware or Massachusetts.[5] *Id.*

On remand and after limited discovery for the purpose of establishing diversity jurisdiction, the District Court held that PMI Delaware was not a "real and substantial party" to the litigation but rather was a "nominal or formal party" whose absence from the proceedings would not prejudice the parties. Accordingly, the District Court dismissed PMI Delaware and reentered summary judgment in favor of Lexington on all counts. This appeal timely followed.

---

[5] For purposes of diversity jurisdiction, Lexington is a citizen of Delaware and Massachusetts. Because 28 U.S.C. § 1332(a) requires complete diversity of citizenship between all plaintiffs and all defendants, there would be no basis for federal jurisdiction if any of the plaintiffs allowed to remain in the case were also a citizen of Delaware or Massachusetts. *See, e.g.*, *Owen Equip. and Erection Co. v. Kroger*, 437 U.S. 365, 373–74, 98 S. Ct. 2396, 2402–03, 57 L. Ed. 2d 274 (1978). As PMI Florida, PMI Delaware, and Yoohoo Capital seek millions of dollars in damages, the amount-in-controversy requirement is satisfied, and no party contends otherwise.

## II.

The existence of subject-matter jurisdiction is a question of law, which we review de novo. *Nat'l Mar. Servs., Inc. v. Straub*, 776 F.3d 783, 786 (11th Cir. 2015). We review for clear error district courts' findings of facts necessary to establish subject-matter jurisdiction. *Id.*

A district court's grant of summary judgment, as a question of law, is reviewed de novo, viewing all the evidence in the light most favorable to the nonmoving parties and drawing all reasonable inferences in their favor. *Flowers v. Troup Cty. Sch. Bd.*, 803 F.3d 1327, 1335 (11th Cir. 2015). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

On their second go-around before this court, PMI Florida, PMI Delaware, and Yoohoo Capital press three alleged errors as follows. First, all three parties assert that the District Court erred by dismissing PMI Delaware from the litigation because PMI Delaware is a real party in interest. As a result, there is not complete diversity between the parties and thus no basis for federal jurisdiction. Second, PMI Florida and PMI Delaware assert that even if jurisdiction had been properly established, the District Court erred by determining that no coverage for the Blue Cross suit existed under the Insurance Policy issued by Lexington. Finally,

8

Yoohoo Capital asserts that the District Court erred by granting summary judgment

to Lexington on its negligent-misrepresentation claim.  We take each contention in

order.

A.

First, we turn to the District Court's order dismissing PMI Delaware as a

"nominal or formal party."  As we cautioned in our previous decision to remand

this case, because the only possible federal jurisdictional basis for these

proceedings is diversity and because PMI Delaware and Lexington are both

citizens of Delaware, jurisdiction would be proper only if PMI Delaware could be

dismissed from this case without prejudicing the parties.[6]  *See Payroll Mgmt., Inc.*,

566 F. App'x at 797–98, 800–02.  We continued that if PMI Delaware could be

dismissed from the case, the District Court's grant of summary judgment to

Lexington should be reentered.  *Id.*

The District Court, with these instructions in mind, determined that PMI

Delaware was not a real party in interest to the litigation.  The court found that

though PMI Delaware was a named insured on the Insurance Policy, PMI

------

[6] Likewise concerned about the possible nonexistence of complete diversity, we also instructed the District Court to determine the citizenship of Yoohoo Capital.  The District Court determined that Yoohoo Capital is a citizen of both Florida and Georgia.  Thus, Yoohoo Capital is diverse from Lexington, a citizen of Delaware and Massachusetts.  No party disputes this finding on appeal.

9

Delaware would not be entitled to any portion of a successful judgment against Lexington because PMI Florida, not PMI Delaware, was the party against whom Blue Cross had filed suit and PMI Florida, not PMI Delaware, was the only party that made a claim for coverage to Lexington.  Over PMI Delaware's objections to the contrary, the District Court also found that "[t]he evidence in this case suggests" that PMI Delaware was not even a party to the underlying Blue Cross contract, which provided healthcare coverage only to PMI Florida's leased employees.[7]  After concluding that "PMI Delaware does not have a real and substantial stake" in the litigation and thus "is not a real party in interest," the District Court held that PMI Delaware's dismissal from the case would not prejudice the parties because a victory for PMI Florida would ensure the exact same relief—coverage from Lexington for the Blue Cross suit—that PMI Delaware was seeking.  Accordingly, the court dismissed PMI Delaware pursuant to Rule 21 of the Federal Rules of Civil Procedure.[8]

---

[7] PMI Delaware was not a named party to the Blue Cross contract; PMI Florida and "PMI Inc. Group Health Plan" were the only named parties.  PMI Florida, PMI Delaware, and Yoohoo Capital maintain here, as they did below, that "other facts" beyond the face of the Blue Cross contract support the conclusion that PMI Delaware was a party to the Blue Cross contract.

[8] Rule 21 provides, "Misjoinder of parties is not a ground for dismissing an action.  On motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  Fed. R. Civ. P. 21.  It is firmly established that Rule 21 "invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time," such as when necessary to establish federal subject-matter jurisdiction. *See, e.g.*,

PMI Florida, PMI Delaware, and Yoohoo Capital contend that dismissing PMI Delaware constitutes reversible error. They argue that the record demonstrates that PMI Delaware would be entitled to share in any judgment against Lexington; therefore, PMI Delaware is a real party in interest. In support of this position, they point to evidence allegedly showing that some leased employees of PMI Delaware were covered by the Blue Cross contract, PMI Delaware suffered its own pecuniary harms that could be recovered from Lexington, and PMI Delaware had been joined as a defendant in the Blue Cross suit as of April 2010.[9]

We disagree that these assertions are sufficient to contradict the District Court's factual findings, which are not plainly erroneous. Nor do they show that PMI Delaware is a real party in interest in this case as a matter of law.[10] This is so

---

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832, 109 S. Ct. 2218, 2223, 104 L. Ed. 2d 893 (1989).

[9] PMI Florida, PMI Delaware, and Yoohoo Capital briefly argue that there is evidence in the record to suggest, contrary to the District Court's findings, that PMI Delaware had been sued by Blue Cross at the same time as PMI Florida and that PMI Delaware had made a demand for coverage to Lexington. Specifically, they point to the complaint filed by Blue Cross against PMI Florida and the complaint filed by PMI Florida against Lexington that make reference to "PMI" generally and "PMI Inc. Group Health Plan," references that allegedly were meant to include PMI Delaware as well as PMI Florida.

Because the District Court's findings regarding these questions were not plainly erroneous, we defer to that court's factual determinations.

[10] Rule 17 of the Federal Rules of Civil Procedure requires that an action "be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). An action brought by the real

11

for at least two reasons.  First, as the District Court found, PMI Delaware had not yet been named as a defendant in the Blue Cross lawsuit at the time PMI Florida made its demand for coverage against Lexington.  Second and relatedly, the District Court also found that PMI Delaware did not, consistent with its obligations under the Insurance Policy, make an independent demand for coverage against Lexington.  As a result, there was no basis for PMI Delaware to seek coverage from Lexington for the Blue Cross suit.  The fact that PMI Delaware was later named as a defendant is of no moment.  Lexington thus did not owe any duty to defend or indemnify PMI Delaware in the Blue Cross suit that would be implicated in the present proceedings.

We find no basis to disturb the District Court's decision to dismiss PMI Delaware pursuant to Rule 21, and therefore affirm that court's finding of subject-matter jurisdiction.

---

party in interest is one "brought by the person who, according to the governing substantive law, is entitled to enforce the right."  6A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, *Federal Practice and Procedure* § 1543 (3d ed. 2015).

B.

Next we turn to the merits of PMI Florida's claims for breach of contract and declaratory judgment.[11]  In its order of September 17, 2013,[12] the District Court found that the Insurance Policy issued by Lexington did not cover losses arising from a breach of contract, such as the failure to make scheduled payments to Blue Cross, and granted summary judgment to Lexington.  Relying on *Waste Corporation of America, Inc. v. Genesis Insurance Company*, 382 F. Supp. 2d 1349 (S.D. Fla. 2005), and *Ranger Insurance Company v. Bal Harbour Club, Inc.*, 549 So. 2d 1005 (Fla. 1989), the District Court noted that under Florida law when no express provision is made for coverage of breach-of-contract claims on the face of an insurance policy, the decision to read into the insurance contract such coverage is based on (1) the policy's definitions of "loss" and "wrongful act" and (2) public-policy considerations.  After weighing these factors, the District Court concluded that the failure to make payments under the Blue Cross contract was not a "wrongful professional act" under the policy.  In a footnote at the end of its order, the court, with an eye toward this appeal, also stated that the Insurance

_____

[11] Having determined that PMI Delaware was properly dismissed from this case, we will, for the ease of the reader, refer to the claims brought on appeal by both PMI Florida and PMI Delaware as PMI Florida's alone.

[12] The District Court reinstated its 2013 order granting summary judgment on December 31, 2014, after PMI Delaware had been dismissed from the case.

13

Policy's exclusion for contractual liability did not apply "because there is no indication that [PMI Florida and PMI Delaware] 'assumed' liability to [Blue Cross] under a contract or agreement."

PMI Florida asserts that these determinations were error.  First, PMI Florida alleges that the "wrongful professional act" for which it seeks coverage was not the failure to make payments under the Blue Cross contract, but rather was the wrongful diversion of funds committed by its former president in conjunction with her "inexperience, lack of education, incompetence, and negligence."  Even if the "wrongful professional act" in question were the failure to make payments under the Blue Cross contract, PMI Florida contends in the alternative that the Insurance Policy's language is sufficiently capacious to cover breach-of-contract claims and that there are sufficient factual disputes concerning the relevant conduct to preclude a grant of summary judgment.

We reject all of these arguments and affirm the District Court's holding that Lexington owed no coverage to PMI Florida, albeit on slightly different grounds. *See Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015) ("This Court may affirm for any reason supported by the record, even if not relied upon by the district court." (citing *United States v. $121,100.00 in U.S. Currency*, 999 F.2d 1503, 1507 (11th Cir. 1993))).  Under Florida law, "'Insurance contracts are construed according to their plain meaning.  Ambiguities are construed against the

14

insurer and in favor of coverage.'  However, courts only look to the rules of construction 'when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction.'"  *Intervest Constr. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494, 497 (Fla. 2014) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)).

Here, we see no contractual ambiguity; the Insurance Policy issued by Lexington explicitly excludes the coverage sought by PMI Florida.  As an initial matter, the relevant part of the policy provides for coverage for "all sums which the **Insured** shall become legally obligated to pay as **Loss Amounts** resulting from any **Claim** … for any **Wrongful Professional Act**."  "**Wrongful Professional Act**" is in turn defined as "any breach of duty, neglect, error, misstatement, misleading statement or omission in performing or failing to perform services for others for a fee in the administration of **Leased Employees** assumed from the **Client**."  The claim in question, the Blue Cross suit, seeks damages for missed payments pursuant to PMI Florida and Blue Cross's contract to provide healthcare coverage for PMI Florida's leased employees; the Blue Cross suit does not seek damages for the wrongful diversion of funds, even if that wrongful diversion directly resulted in the missed payments.  That is, the Blue Cross suit is a run-of-the-mill breach-of-contract claim brought by a third party distinct from any of PMI Florida's client service agreements.  The Blue Cross suit is not a claim brought by

15

PMI Florida's leased employees or clients.[13]  If PMI Florida's proposed understanding of the policy's scope were correct, Lexington would likewise be obligated to cover PMI Florida's failure to pay *any* of its contractually obligated debts—including its rent and utilities bills.  It is hard to see how the policy, given the language quoted above, could be read faithfully to include such coverage.

Any remaining doubts, however, are clearly resolved by the policy's exclusion of contractual liability,[14] which provides:  "This insurance does not apply to any **Claim** against an **Insured** … arising out of liability the **Insured** assumed under any contract or agreement."  To the extent the contractual-liability exclusion may prove ambiguous in other circumstances, as may be the case in suits brought pursuant to contracts PMI Florida entered with its employees or clients, we hold that it squarely applies to bar coverage for the Blue Cross suit.  Though the

---

[13] Because the cases PMI Florida relies upon involve claims brought by parties to the underlying insurance policy, they are inapposite here.  *See Republic Franklin Ins. Co. v. Albemarle Cty. Sch. Bd.*, 670 F.3d 563 (4th Cir. 2012); *MarineMax, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 8:10-cv-1059-T-33AEP, 2013 WL 425832 (M.D. Fla. Feb. 4, 2013), *aff'd*, 616 F. App'x 417 (Mem.) (11th Cir. 2015).

[14] Though we strongly suspect that the District Court's thorough analysis of Florida's public policy is correct, there is no reason to undertake that analysis when the language of the Insurance Policy is clear on its face.  Presumably, the court engaged in its public-policy analysis because of the factual disputes surrounding PMI Delaware's uncertain involvement in the Blue Cross contract, as it found that "there is no indication that [PMI Florida and PMI Delaware] 'assumed' liability to [Blue Cross] under a contract or agreement."  There is no question that PMI Florida "assumed liability" for making payments to Blue Cross, as it is undisputed that PMI Florida is a named party to the Blue Cross contract.  Now that PMI Delaware has been dismissed from the case, we hold that PMI Florida's remaining claims are barred by the contractual-liability exclusion.

parties could have allocated the risk so that Lexington would have been on the hook for PMI Florida's failure to pay Blue Cross in theory, the contractual-liability exclusion makes clear that they did not do so in fact.

We therefore affirm the District Court's grant of summary judgment to Lexington on PMI Florida's claims for breach of contract and declaratory judgment.

## C.

Finally, Yoohoo Capital contends that the District Court improperly granted summary judgment to Lexington on its claim of negligent misrepresentation. In its order of March 22, 2012,[15] the District Court dismissed Yoohoo Capital's negligent-misrepresentation claim as a matter of law. The statement in question was made, via email, by Burwell, a representative of Lexington, to an official of Yoohoo Capital to the effect that "it appeared to him that coverage was available under the policy but that he would have to review the matter with his supervisor."[16] The District Court, after considering both Florida common law and the *Restatement (Second) of Torts*, determined that Yoohoo Capital would, at a

---

[15] The District Court reinstated its 2012 order granting summary judgment on December 31, 2014, after PMI Delaware had been dismissed from the case.

[16] As mentioned above, the exact content of that communication is as follows: "As we discussed, there appears to be coverage for this matter under Policy No. 20432538 but, as we also discussed, I must review with my supervisor."

17

minimum, have to show that Lexington made a misrepresentation or false statement upon which Yoohoo Capital justifiably relied. Because of its "equivocal nature" and the lack of any "evidence in the record to suggest that" the statement "was false in any way," the District Court concluded that "no jury could reasonably find that Yoohoo justifiably relied on [the statement] as an indication that there would be coverage under the policy."

Yoohoo Capital asserts that the District Court's analysis "ignores other evidence related to the misrepresentation," including various testimony and affidavits concerning other statements made to Yoohoo Capital by Lexington that suggest Lexington believed there would be coverage for the Blue Cross suit. Yoohoo Capital also points our attention to the allegedly excessive length of time it to took Lexington to determine whether coverage existed, as well as the "reasonable inference" that Burwell's disclaimer that he needed to review coverage with his supervisor "was itself false or misleading" because the representative "himself is an attorney and a relatively senior claims adjustor."

We fail to see how the additional facts Yoohoo Capital highlights, to the extent they may be relevant at all, could, as a matter of law, support a reasonable jury finding Burwell's inherently equivocal statement—that "there appears to be coverage" but he "must review" that determination with his supervisor—to be both false and capable of being justifiably relied on.

18

We therefore affirm the District Court's grant of summary judgment to Lexington on Yoohoo Capital's claim for negligent misrepresentation.

IV.

Accordingly, the District Court's dismissal of PMI Delaware and its grant of summary judgment to Lexington on all claims are

AFFIRMED.