[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13628
_____

D.C. Docket No. 1:14-cv-00042-WLS


MATHIS KEARSE WRIGHT, JR.,

Plaintiff - Appellant,

versus

SUMTER COUNTY BOARD OF ELECTIONS AND REGISTRATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(July 28, 2016)

Before TJOFLAT and ROSENBAUM, Circuit Judges, and KAPLAN,[*] District
Judge.

_____

[*] Honorable Lewis A. Kaplan, United States District Judge for the Southern District of
New York, sitting by designation.

PER CURIAM:

Mathis Kearse Wright Jr. brought this action in the United States District Court for the Middle District of Georgia challenging Sumter County, Georgia's method of electing its Board of Education under § 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301.  The County moved for summary judgment, which the District Court granted based on Wright's failure to establish the third precondition to liability under § 2 as established by the Supreme Court in *Thornburg v. Gingles*: "that the white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances . . . —usually to defeat the minority's preferred candidate." 478 U.S. 30, 51, 106 S. Ct. 2752, 2766–67, 92 L. Ed. 2d 25 (1986).  Wright appealed.

Sumter County's Board of Education consists of seven members, five of whom are elected from discrete voting districts and two of whom are elected at large (the "5/2 plan").  In 2014 when the 5/2 plan was instituted, Sumter County's population was 51.8% African American and 42.2% Caucasian.  The voting-age population was 48.1% African American and 46.6% Caucasian.  There were 7,279 African Americans and 7,266 Caucasians registered to vote.

Wright relied on an expert of political science, Dr. Frederick McBride, in his attempt to establish the § 2 violation.  In his report, Dr. McBride analyzed twelve

2

Board of Education elections.  Eight of those elections occurred in 2014 under the 5/2 plan, while the four remaining elections occurred in 2010, 2008, 2006, and 2002, when the Board consisted of nine members elected from single-member districts.  According to Dr. McBride, minority-preferred candidates won two of the seven seats in the 2014 elections—the seats for Districts One and Five.  Dr. McBride proposed an alternative method of electing Board members such that all seven members of the Board are elected from single-member districts, thereby eliminating the at-large voting.  Dr. McBride opined that this would enable African Americans to elect at least three members of the Board.

The County produced its own expert in political science, Dr. Karen Owen, who independently reviewed Dr. McBride's data and findings with regard to the twelve elections he analyzed.  She concluded that Wright had failed to show that minority-preferred candidates were usually defeated by a white voting bloc.

We review a grant of summary judgment de novo, "viewing all the evidence in the light most favorable to the nonmoving part[y] and drawing all reasonable inferences in [its] favor." *Payroll Mgmt., Inc. v. Lexington Ins. Co.*, 815 F.3d 1293, 1297 (11th Cir. 2016) (citing *Flowers v. Troup Cty. Sch. Bd.*, 803 F.3d 1327, 1335 (11th Cir. 2015)).  "Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).  The Court does "not weigh

3

conflicting evidence or make credibility determinations." *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1159 (11th Cir. 2015).

Here, the District Court erred by improperly weighing the evidence and making credibility determinations at the summary-judgment stage. For example, the District Court improperly discounted Dr. McBride's calculations in some instances. For each of the twelve analyzed elections, Dr. McBride modeled voter preferences using three statistical models. For some of the contested elections that Dr. McBride analyzed, one or more models showed that the percentage of black voters who preferred either candidate totaled greater than one hundred percent. That is, Candidate A was preferred, for example, by ninety-three percent of the minority vote and Candidate B was preferred by forty-four percent of the minority vote for a particular election. The District Court dismissed as unreliable the minority-voting results of two elections altogether—the 2014 District 3 election and the 2006 District 3 election—because the total minority support for either candidate was more than one hundred percent under all statistical models or results were not available for other models. By excluding these two elections, the District Court arguably inflated the percentage of elections minority-preferred candidates won, thus making it more difficult for Wright to show that minority-preferred candidates usually were defeated by a white voting bloc as required by the third *Gingles* precondition. The District Court tilted the balance in the County's favor

4

by making an improper credibility judgment against Dr. McBride and excluding these elections.

The District Court also improperly resolved a dispute of material fact when disregarding a four-way at-large election in which none of the candidates received a majority but the minority-preferred candidate received a plurality of the votes. The parties disputed whether this at-large election should be counted as a win or a loss for the minority-preferred candidate. In the light most favorable to Wright, this four-way election demonstrates that white voters voted together for two candidates to prevent the minority-preferred candidate from gaining the majority necessary to win the election. In other words, white voters arguably voted together to defeat the minority-preferred candidate. Whether the minority-preferred candidate's advancing to a runoff election should mitigate the defeat is a question that goes to how much weight the four-way election should be given as evidence of vote dilution, but at the summary-judgment stage, this election should have given rise to an inference in Wright's favor as an electoral defeat. By the same token, the district court's assertion that the only other view of the four-way election is as an electoral "success" because the minority-preferred candidate received a plurality of the votes ignores the recognized possibility that majority-vote requirements can be used to dilute minority voting strength. Whether this election provided evidence of majority-bloc voting to prevent minority-preferred candidates from succeeding was

5

a disputed issue of material fact that the District Court improperly resolved in the County's favor.

Finally, when discussing minority-preferred candidates' ability to win the at-large seats on the Board, the District Court concluded that "the evidence indicates that in districts with similar voter make-up as the at-large voting population, minority-preferred candidates can and have won."  The District Court concluded this by looking to district elections from 2008 and 2010 where the black voting-age populations were similar to the overall black voting-age population in the at-large 2014 election.  By determining that minority-preferred candidates can win the at-large seats, the District Court improperly weighed these past district elections more heavily than the 2014 at-large elections in which the minority-preferred candidates did not win.

The District Court in this case made impermissible credibility determinations at the summary-judgment stage, and for that reason, its grant of summary judgment to the County cannot stand.  Genuine disputes of material fact remain and therefore the judgment must be REVERSED and the case REMANDED.

SO ORDERED.

TJOFLAT, Circuit Judge, concurring:

I agree with the Court that the District Court made impermissible credibility judgments here and for that reason the judgment must be reversed and the case remanded for further proceedings.  But even if the District Court had not improperly weighed the evidence, I would still find that the judgment must be vacated and remanded.

Wright is essentially challenging only the at-large component of the 5/2 plan.  However, Wright has failed to show how his alternative plan whereby all seven members of the Board are elected from single-member districts would increase African-American membership on the Board.  He has shown that the majority voting-age population in three of the newly drawn districts would be African American, but without statistical evidence from past elections, it is pure speculation to say that African-American membership on the Board would thereby increase.  It would be impossible for us to review the District Court's order on summary judgment without findings with regard to the at-large elections.  Among other things, to decide this § 2 case, the District Court must determine:

- How each district in the current 5/2 plan voted in the May 2014 at-large elections;

7

- How each district in the current 5/2 plan would be likely to vote in the proposed seven-district plan; and

- How African Americans have previously performed in at-large elections.