[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12276
_____

D.C. Docket No. 4:18-cv-10110-JLK


NEW SOUTH COMMUNICATIONS, INC.,
d.b.a. Florida Keys Media, LLC,

                                                    Plaintiff - Appellants,

versus

HOUSTON CASUALTY COMPANY,

                                                    Defendant - Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 2, 2020)

Before MARTIN, ROSENBAUM, and TALLMAN,[*] Circuit Judges.

PER CURIAM:

When it made landfall in the Florida Keys on September 10, 2017, then-Category 4 Hurricane Irma left a path of destruction in its wake.  This case involves an insurance claim that Plaintiff-Appellant New South Communications, Inc., filed with its insurer, Defendant-Appellee Houston Casualty Co., to recover insurance proceeds for hurricane damage two buildings (known as Building 35 and Building 41) sustained.  As it turned out, Plaintiffs-Appellants Florida Keys Media, LLC, and Robert Holladay—not New South—owned the properties involved, and they were also named insureds on the same Houston policy as New South.

But before New South realized that it did not own the buildings, New South filed suit against Houston for failure to pay the claim.  Florida Keys Media and Holladay later joined as Plaintiffs.  After they did, Houston moved for summary judgment.  The district court granted the motion.  In part, it held that none of the Plaintiffs enjoyed standing.  In the alternative, the district court concluded that the Plaintiffs lost on the merits.

---

* Honorable Richard C. Tallman, United States Circuit Judge for the Ninth Circuit Court of Appeals, sitting by designation.

After careful consideration and with the benefit of oral argument, we agree with the district court that New South lacks standing. But we conclude that Florida Keys Media and Holladay have established standing.

As for the merits, after the district court granted summary judgment to Houston, Florida's Third District Court of Appeal issued a new ruling concerning Florida insurance law that now requires vacatur of the order granting summary judgment as it pertains to the merits. We therefore vacate the summary-judgment order and remand to the district court for further proceedings consistent with this opinion.

## I.

### A. Factual History

After Hurricane Irma blew through the Keys on September 10, 2017, Plaintiff-Appellant New South reported to Defendant-Appellee insurer Houston a claim for damages to two office buildings located in the Keys.[1] The properties were covered under an insurance policy Houston issued.

Houston enlisted an independent adjustment firm to inspect the interiors and exteriors of the two office buildings at Location No. 35 in Tavernier, Florida ("Building 35"), and Location No. 41 in Sugarloaf Key, Florida ("Building 41").

---

[1] The claim also sought insurance proceeds for four radio towers. But the parties ultimately acknowledged that none of the eventual Plaintiffs in this litigation owned the four radio towers, so the towers are not involved in this appeal.

3

The initial investigation indicated that rain infiltration caused some interior building damage, which fell under a coverage exclusion in the policy. But within that exclusion was an exception: interior loss was covered if caused by rain "entering through openings made by a 'named peril,'" including "windstorms" from hurricanes like Irma.

Blake Tuomy, retained by an agent for Houston, inspected the properties to determine the causes and origins of the damages and openings. With respect to Building 35, Tuomy attributed much of the interior moisture intrusion to conditions that existed before Hurricane Irma touched down in the Keys. But he did report an isolated patch of wall where a Hurricane Irma-inflicted roof-damage leak could not be ruled out. He also reported some localized interior water damage directly below three holes believed to be made by a displaced roof-mounted antenna dislodged during Hurricane Irma. As to Building 41, Tuomy concluded that there was no indication that Hurricane Irma had damaged or breached the exterior of the building in a way that could allow water penetration at the locations of water infiltration.

Based on Tuomy's report, Houston determined that the cash value of the covered loss, minus the deductible, resulted in an adjusted amount of $52,217.14. On Houston's behalf, Houston's counsel sent a letter to New South's public-adjusting firm about the adjusted amount and about Houston's partial denial of coverage concerning Buildings 35 and 41. Counsel explained that the policy's

4

Interior-of-Building limitation for interior loss caused by rain (that did not enter through openings created by Hurricane Irma) precluded coverage beyond the adjusted amount. Houston also mailed New South a statement-of-loss form with instructions to sign, notarize, and return a proof-of-loss statement within sixty days. Neither New South nor any named insureds under the policy ever submitted a sworn proof of loss.

## B. Procedural History

After it received Houston's partial denial letter, New South filed a breach-of-contract suit against Houston in state court. In the suit, New South listed itself as the only Plaintiff.[2] The complaint alleged that Houston failed to issue proper payment for the cost of repairs necessary to restore the properties to their pre-loss condition.

Houston removed the case to the Southern District of Florida. During discovery, corporate-disclosure statements revealed that other named insureds on the New South policy with Houston—Florida Keys Media and Robert Holladay, individually—owned the two buildings listed in the claim. Since New South did not own or lease either of the two properties, it amended the complaint and added the

---

[2] New South filed the original complaint in this case as "New South Communications, Inc., d.b.a. Florida Keys Media, LLC." In fact, though, New South and Florida Keys Media are two entirely separate corporate entities, and New South was not doing business as Florida Keys at any time relevant to this case.

buildings' owners, Florida Keys Media and Holladay, as Plaintiffs[3] (collectively referred to as "the Insureds").

Houston moved for summary judgment on three grounds. It contended that the Insureds lacked standing, failed to satisfy the policy's conditions precedent for coverage and filing suit, and were unable to demonstrate an exception to the Interior-of-Building exclusion for interior loss caused by rain. Simultaneously, Houston filed a motion *in limine* seeking to exclude certain testimony by the Insureds' expert, Alfredo Brizuela, concerning the causes of the openings that allowed for rain infiltration in Buildings 35 and 41 and the resulting damages.

The district court held a hearing on the summary-judgment motion. During that hearing, among other things, the Insureds relied on Brizuela's expert report to address Houston's contention that the Interior-of-Building coverage exclusion precluded recovery beyond $52,217.14. Ultimately, the district court agreed with Houston, granted the motion for summary judgment, dismissed the case with prejudice, and denied as moot Houston's motion to exclude Brizuela's testimony. The Insureds timely appealed.

**II.**

---

[3] The amended complaint still satisfied diversity-jurisdiction requirements, as the breach-of-contract claim involved Plaintiffs New South (an inactive corporation previously incorporated in Florida and Mississippi), Holladay (a Louisiana resident), Florida Keys Media (a Florida company with its principal place of business in Louisiana), and Defendant Houston (a Texas corporation with its principal place of business in Texas). *See* 28 U.S.C. § 1332.

We review standing *de novo*.  *AT & T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.,* 494 F.3d 1356, 1360 (11th Cir. 2007).  We also review *de novo* the district court's grant of summary judgment.  *Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC,* 872 F.3d 1161, 1163-64 (11th Cir. 2017).  In conducting our review, we view all evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmoving party—here, the Insureds.  *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1141 (11th Cir. 2014).  Summary judgment is appropriate only when the moving party demonstrates that no genuine dispute exists over the material facts, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

Because this federal action is based on diversity jurisdiction and the insurance policy does not include a choice-of-law provision, Florida's substantive law governs our interpretation of the policy.  *See Great Am. All. Ins. Co. v. Anderson*, 847 F.3d 1327, 1331 (11th Cir. 2017); *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006).  We review *de novo* the district court's interpretation of the policy's language.  *Southern-Owners*, 872 F.3d at 1164.

## III.

### A.  Standing

Whether the Insureds have standing raises a jurisdictional question, so we begin with that issue.  Under Article III of the Constitution, our jurisdiction as a

7

federal court is limited to "cases" and "controversies." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019). For a matter to qualify as a "case" or "controversy," as relevant here, the plaintiff must establish standing to sue. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546-47 (2016). Article III standing exists when the plaintiff demonstrates that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. at 1547.

In evaluating the Insureds' standing here, we must consider the terms of the policy. But before we do that, a brief review of the relevant Florida principles of contract construction that govern our interpretation of the policy is in order.

Florida courts construe insurance contracts in accordance with the plain meaning of the policies as bargained for by the parties. *Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993). But insurance contracts can sometimes include "a genuine inconsistency, uncertainty, or ambiguity" in the policy's meaning. *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986). A policy provision is ambiguous when "the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). We construe ambiguous coverage provisions *and* exclusions against

the insurer and in favor of the insured. *Id.* (noting that "exclusionary clauses are construed even more strictly against the insurer than coverage clauses").

Ultimately, a court cannot rewrite a contract, add meaning that is not present, or reach results contrary to the parties' intentions. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005); *Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494, 497 (Fla. 2014). Rather, in construing insurance policies, courts must read the policy as a whole and give meaning and operative effect to every provision. *Anderson*, 756 So. 2d at 34.

Under Florida law, a party seeking to enforce an insurance contract must have an "insurable interest" in the property secured, which means an "actual, lawful, and substantial economic interest" in keeping the property "free from loss, destruction, or pecuniary damage or impairment." *See* Fla. Stat. § 627.405(1)–(2); *see also Travelers Indem. Co. v. Duffy's Little Tavern, Inc.*, 478 So. 2d 1095, 1096 (Fla. 5th DCA 1985). Where an insurance policy insures multiple parties, the rights of each party under the policy "are separate and independent of the rights of the others." *Unijax, Inc. v. Factory Ins. Ass'n,* 328 So. 2d 448, 452 (Fla. 1st DCA 1976). We keep these principles in mind as we evaluate the standing of the three Plaintiffs.

   i.    *Florida Keys Media and Holladay*

As owners of the damaged properties, Florida Keys Media and Holladay argue that they have standing to sue Houston because Houston's partial denial of the

9

claim—irrespective of which Insured initially filed it—causes them injury. Florida Keys Media and Holladay point to the facts that their properties suffered damage, and Houston, their insurer, has refused to pay to remedy the damage that their policy allegedly covers. They assert that, under the policy, it is irrelevant to coverage whether they filed the claim or any other named insured did so, as long as one of the named Insureds filed a claim for the Florida Keys Media- and Holladay-owned properties.[4] Based on the policy language, we agree.

The policy contained the following relevant language:

## PROPERTY COVERAGE PART

In this coverage form, the words *"you" and "your" mean the persons or organizations named as the insured on the declarations* and the words "we", "us", and "our" mean the company providing this coverage.

\* \* \*

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice** -- In case of a loss, *"you"* must:
   a. give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice); and
   b. give notice to the police when the act that causes the loss is a crime.

\* \* \*

---

[4] The parties also dispute whether the district court improperly disregarded Holladay's sworn interrogatories and affidavit attesting that New South initially reported the claim on behalf of all named insureds under the policy. But the record indicates that New South became aware of the actual property owners only during discovery at the district court. So we find no error in the district court's decision in this regard.

10

(bold, italicized emphasis added).

The policy language unambiguously defines "you" as the "persons or organizations named as the insured on the declarations." In this case, the "property named insured list" includes New South, Florida Keys Media, and Holladay. That means that under the notice provision, which says what "you" must do, any of the named insureds—New South, Florida Keys Media, or Holladay—had to give Houston or its agent notice of the loss and "a description of the property involved." Contrary to Houston's contention, nothing in the policy language requires—or even suggests—that each named insured may file a claim concerning only its own property. We will not rewrite the policy to effect Houston's preferred requirement. *See Taurus Holdings*, 913 So. 2d at 532. Rather, under the policy's own terms, any of the named insureds could provide Houston with the required notice of the loss and the property involved, regardless of which of the three entities actually owned the damaged property.

Under Florida law, as the owners of Buildings 35 and 41, named insureds Florida Keys Media and Holladay also have an insurable interest in those insured properties. *See Travelers*, 478 So. 2d at 1096. That makes them real parties in interest to this breach-of-contract suit seeking coverage for repairs necessary to restore the properties to their pre-loss condition. *See* Fed. R. Civ. P. 17(a)(1); *see*

11

*also Payroll Mgmt., Inc. v. Lexington Ins. Co.,* 815 F.3d 1293, 1298-99 (11th Cir. 2016).

In sum, Florida Keys Media and Holladay have established Article III standing.  First, they have "personally" experienced an injury, *see Granite State Outdoor Advert., Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112, 1116 (11th Cir. 2003), in that they own the damaged properties listed in the New South claim, and Houston has refused to pay for what Florida Keys Media and Holladay contend are covered losses under their policy with Houston.  Second, Florida Keys Media's and Holladay's injuries are fairly traceable—indeed, directly caused by—Houston's refusal to provide coverage for the losses to the two buildings.  And third, a favorable court determination finding a breach of contract and awarding damages for the interior losses of Florida Keys Media and Holladay would redress their injuries.  For these reasons, Florida Keys Media and Holladay have standing to sue.

 *ii. New South*

New South also claims to have standing.  But unlike Florida Keys Media and Holladay, New South had no insurable interest in the covered property at the time of the loss.  That is so because, as New South conceded in its motion for leave to file an amended complaint, Florida Keys Media and Holladay—not New South—own the two buildings listed in the claim.  Without an actual economic interest in Buildings 35 and 41, New South has suffered no cognizable injury because of

Houston's refusal to cover damages to the properties.  Rather, any recovery under the asserted breach-of-contract claim would be payable to only Florida Keys Media or Holladay, or both.  So New South lacks standing to sue Houston in this suit.

## B.  Satisfaction of Condition Precedent to Coverage

Next, we consider whether Florida Keys and Holladay forfeited any potential insurance coverage by failing to comply with their post-loss obligation, or condition precedent, to file a proof of loss with Houston.[5]  A condition precedent requires the execution of an act after the contract has been entered but before the obligation to perform under the contract is triggered.  *Racing Props., L.P. v. Baldwin*, 885 So. 2d 881, 882–83 (Fla. 3d DCA 2004).  In evaluating whether Florida Keys Media or Holladay failed to complete a necessary condition precedent, we again begin with the relevant policy language:

### WHAT MUST BE DONE IN CASE OF LOSS

\* \* \*

3. **Proof Of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss.  This must include the following information:
   a. the time, place, and circumstances of the loss;
   b. other policies of insurance that may cover the loss;
   c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

_____

[5] The parties do not assert that Holladay and Florida Keys Media's failure to provide notice constituted a material breach forfeiting coverage of the policy plan.  So we analyze only whether the failure to submit the sworn proof of loss was a material breach.

     d. changes in title of the covered property during the policy period; and

     e. estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss

* * *

## OTHER CONDITIONS

[. . .]

10. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

     a. all of the "terms" of this coverage have been complied with; and

     b. the suit has been brought within two years after "you" first have knowledge of the loss.
If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

* * *

Under the policy's plain language, the Insureds' submission of "proof of loss" represents a condition precedent to the Insureds' ability to sue Houston. Here, none of the named insureds submitted a proof of loss to Houston for the damages to Buildings 35 and 41, so Houston argued in the district court that it had no duty to pay insurance proceeds for losses to those properties. The district court agreed.

But at that time, the district court did not have the benefit of *American Integrity Insurance Co. v. Estrada*, 276 So. 3d 905, 912 (Fla. 3d DCA 2019), which

14

was issued after the district court entered its decision.[6]  We now reconsider the

parties' arguments in light of *Estrada*.

In *Estrada*, Florida's Third District Court of Appeal emphasized that "Florida

law abhors forfeiture of insurance coverage."  *Id.* at 914 (citation and internal

quotation marks omitted).  In line with this perspective, Florida law construes

"policy provisions that tend to limit or avoid liability . . . liberally in favor of the

insured and strictly against the drafter who prepared the policy."  *Id.* (cleaned up).

As a result, *Estrada* concluded, a total forfeiture of coverage because of a failure to

comply with post-loss obligations occurs only when the insured's breach is both

material and prejudicial to the insurer.[7]  *See id.*

*Estrada* provides the relevant framework for conducting this analysis.  *See id.*

at 912, 914-16.  Under it, we first consider whether the insurer pled and proved that

the insured materially breached a post-loss policy provision.  *Id*. at 912.  If so,

---

[6] "[W]e are bound to apply the specific law that would govern if this case were brought in state court."  *Bravo v. United States*, 532 F.3d 1154, 1165–66 (11th Cir. 2008).  Here, the case was initially filed in the Circuit Court of the 16th Judicial Circuit in and for Monroe County, so where a conflict among Florida's Circuit Courts of Appeal exists, we must apply decisions of Florida's Third District Court of Appeal.

[7] *Estrada* agreed with Florida's Fifth District Court of Appeal's analysis in *Allstate Floridian Insurance Co. v. Farmer*, 104 So. 3d 1242 (Fla. 5th DCA 2012), which required that the insurer be prejudiced by the insured's failure to comply with a material post-loss condition before insurance coverage would be forfeited.  But the Fourth District Court of Appeal has concluded in at least some cases that the insurer need not have been prejudiced by the insured's failure to comply for the insurer to enjoy a valid coverage defense.  *See*, *e.g.*, *Rodrigo v. State Farm Fla. Ins. Co.*, 144 So. 3d 690, 692 (Fla. 4th DCA 2014).  As we have explained, *see supra* at note 6, we follow the Third District Court of Appeal, since this action was initially filed in state court in that state District.

prejudice to the insurer is presumed, and the burden shifts to the insured to prove that the breach did not prejudice the insurer. *Id.* at 916.

      *i.*    *Material Breach of the Policy's Proof-of-Loss Condition*

Here, as we have noted, the post-loss condition in question required at least one of the named insureds under the policy to file the required proof of loss. A failure to provide a sworn proof of loss to prove damages can be a material breach of a policy's conditions precedent. *Rodrigo v. State Farm Fla. Ins. Co.*, 144 So. 3d 690, 692 (Fla. 4th DCA 2014); *see also Amica Mut. Ins. Co. v. Drummond*, 970 So. 2d 456, 460 (Fla. 2d DCA 2007) (concluding that the insured's failure to submit to an examination under oath, a post-loss obligation, "was a material breach of a condition precedent to [the insurer's] duty to provide coverage under the policy").

Here, none of the Insureds ever submitted a signed and sworn proof of loss to Houston for the two damaged properties listed in the claim. They therefore breached a material post-loss obligation.

The Insureds try to avoid this result by offering several excuses for their failure to comply with this condition. None is availing.

First, they argue that Houston never legitimately requested a sworn proof of loss because it demanded that the Insureds sign a document swearing that certain interior water damages were excluded and that the amount of the claim was limited to $52,217.14—a position with which they disagreed. But nothing in the policy

required the Insureds to submit a proof of loss on a particular form. So nothing prevented the Insureds from providing their proof of loss to Houston in the form that the Insureds desired.

Second, the Insureds maintain that the facts associated with their explanations for noncompliance with their post-loss obligation to provide proof of loss are in dispute, so they are reserved for a jury determination. *See Haiman v. Fed. Ins. Co.,* 798 So. 2d 811, 812 (Fla. 4th DCA 2001). That argument fails for the same reason the Insureds' first one did: nothing in the policy required the Insureds to comply with the proof-of-loss requirement by signing the form that Houston provided.

Third, the Insureds contend that Houston waived the proof-of-loss requirement because it conceded that some portion of the claim (specifically, $52,217.14) was covered and that the exception to the Interior-of-Building exclusion applied. But under Florida law, an insurer's investigation into "any loss or claim under any policy" or an insurer's partial payment to "engag[e] in negotiations looking toward a possible settlement of any such loss or claim" does not waive any policy requirement, including failure to provide proof of loss. Fla. Stat. § 627.426(1)(c).

In short, Houston has established that the Insureds materially breached a proof-of-loss condition.

  ii. *Prejudice*

17

Under *Estrada*, then, the burden shifts to the Insureds to establish that their material breach of the proof-of-loss requirement did not prejudice Houston. But as we have noted, *Estrada* was not issued until after the district court granted summary judgment to Houston. So the parties had no reason to present evidence concerning this requirement in the district court, and the district court had no opportunity to analyze the prejudice inquiry in the first place. For these reasons, we remand for the district court to consider *Estrada*'s prejudice inquiry in the first instance and, if it wishes, to allow the parties to submit additional evidence concerning that issue.

## C. Interior-of-Building Loss Exclusion

We now consider whether, as Houston asserts, the policy's Interior-of-Building loss exclusion bars coverage for damages beyond what Houston has previously acknowledged it would pay ($52,217.14). As always, we start with the policy language. It excludes from coverage "loss to the interior of buildings or structures or to personal property in the buildings or structures caused by rain" unless the rain entered through "openings made by a 'named peril.'" The policy defined "named peril" to include a "windstorm."

When a policy's exclusion contains an exception, like the policy here, the insured must shoulder the burden of demonstrating that the exception applies. *E. Fla. Hauling, Inc. v. Lexington Ins. Co.,* 913 So. 2d 673, 678 (Fla. 3d DCA 2005). As Houston readily concedes, rain entering through openings Hurricane Irma created

18

caused at least some of the damage in the Insureds' claim for Buildings 35 and 41—namely, damage the cash value of which was $52,217.14.  But Houston asserted that the hurricane did not cause any damage beyond that.  So we must determine whether the Insureds satisfied their burden to demonstrate that at least a material issue of fact remains concerning whether Hurricane Irma's winds created openings in the buildings that allowed for rain to enter and cause interior damage beyond that conceded by Houston.

In the district court, the Insureds filed the two-page affidavit and 327-page report of professional engineer Alfredo Brizuela, who inspected the site one year after Hurricane Irma made landfall.  But the affidavit itself does not identify any specific locations within the buildings where openings Brizuela attributed to Hurricane Irma allowed for claimed water intrusion.  Nor does it cite any pages within the 327-page report that pinpoint any such locations.

Rather, Brizuela's affidavit simply claimed in a conclusory manner that he "identified several areas wherein the Properties sustained wind created openings by Hurricane Irma that allowed for moisture intrusion."  And even on appeal—both in their brief and at oral argument—the Insureds still failed to direct this Court to any specific part of the record supporting their position.  Instead, they again state in a conclusory way that "substantial evidence" demonstrates wind-created openings caused by Hurricane Irma, which, in turn, allowed water infiltration and damage

beyond what Houston has acknowledged.  It does not help that they effectively try to send us on a hunt for treasure that may or may not exist by generally citing two technically written exhibits in the record, totaling nearly 500 pages, with the hope that we will discover any relevant portions (if there are any) that might defeat a finding of summary judgment.

But that is not how our adversary system works.  The advocates—not the courts—are charged with identifying the evidence that supports their claims.  Indeed, Federal Rule of Appellate Procedure 28(a)(8) expressly instructs that the appellant bears the responsibility for providing the court "with citations to the authorities and parts of the record on which the appellant relies." *See also Mendoza v. United States Atty. Gen.,* 327 F.3d 1283, 1286 n. 4 (11th Cir. 2003) (noting that failure to include "citations to the . . . parts of the record on which the appellant relies . . . may result in waiver or abandonment of issues on appeal").

Perhaps the Insureds do not specify any particular parts of Brizuela's report because no part appears to conclude that Hurricane Irma was the "but-for" causation of building openings that permitted rain and moisture intrusion, which in turn caused interior damage beyond what Houston has already identified.  In his report's summary chart of alleged "wind force and water damage caused by Hurricane Irma," Brizuela identified only categories of damages, such as "interior dry wall" and "interior/exterior door and window damage," without reference to their exact

locations, causes, or contributions to moisture intrusion and interior loss.  Brizuela then concluded in his professional opinion that "the wind pressure, wind gusts and airborne debris produced by Hurricane Irma, created openings at exterior fenestrations, mechanical attachments and roof assemblies for moisture entry."

These conclusory assertions without reference to the corresponding specific interior damage—let alone the specific building where that damage occurred—are not sufficient to create a material issue of fact concerning whether the exception to the Interior-of-Building exclusion applied to more damage than Houston conceded. *See Evers v. Gen. Motors Corp.,* 770 F.2d 984, 986 (11th Cir. 1985).  For this reason, should the Insureds demonstrate on remand that Houston was not prejudiced by their failure to file proof of loss, the Insureds' recovery for property damage is limited to $52,217.14.

## IV.

For these reasons, we affirm the district court's determinations that New South lacked standing and that the Interior-of-Building limitation applied to coverage beyond $52,217.14.  We reverse the conclusion that Florida Keys Media and Holladay lack standing.  We remand for further proceedings on the *Estrada* prejudice inquiry, consistent with this opinion.

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**.